STATE of Tennessee, DEPARTMENT OF CHILDREN'S SERVICES

v.

Portia Ann Letney BUTLER, et al.

Court of Appeals of Tennessee, at Jackson.

On Briefs July 14, 2003 Session.

Aug. 27, 2003.

Permission to Appeal Denied by Supreme Court Dec. 22, 2003.

Roger Stanfield, Jackson, for Appellant, William Butler.

Paul G. Summers, Attorney General and Reporter; Elizabeth C. Driver, Assistant Attorney General, Nashville, for Appellee, State of Tennessee Department of Children's Services.

## OPINION

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Department of Children's Services filed petition to terminate parental rights of biological mother and father to dependent and neglected minor child based on several grounds, including abandonment. Department later amended its petition to include an additional ground for termination of father's parental rights, citing T.C.A. § 36–1–113(g)(6). Juvenile court held two separate hearings on Department's petition. As part of the second hearing, mother consented to termination of her parental rights as to minor child. Upon conclusion of hearings, juvenile court entered order terminating mother and father's parental rights, finding grounds for termination of father's rights, and that termination was in the child's best interests. Father appeals. We affirm.

This case involves a petition to terminate the parental rights of a biological father to his minor child. Minor child

J.D.M.B. (d.o.b. 9/22/90), was born to Portia Ann Letney Butler ("Mother") and respondent William Mark Butler ("Father") in Corinth, Mississippi. At the time of minor child's birth, Father was incarcerated in the Dyersburg County, Tennessee jail, awaiting trial on multiple criminal charges. Father eventually entered guilty pleas on two counts of Accessory after the fact of Murder, one count of Arson, and one count of Attempted Grand Larceny. Father was given consecutive sentences totaling 35 years, and has been continuously incarcerated since approximately February 5, 1990. Respondent has twice been denied parole.

J.D.M.B. was removed from Mother's home to the care of petitioner, Tennessee Department of Children's Services ("DCS"), in September 1991, upon evidence that the child was dependent and neglected.[1] Minor child has resided in the same foster home since 1991. In March 2000, DCS filed a petition [2] to terminate the parental rights of Mother on multiple grounds, including willful abandonment under T.C.A. § 36–1–113(g)(1), substantial noncompliance with a permanent parenting plan pursuant to T.C.A. § 36–1–113(g)(2), and the existence of persistent, unremedied conditions in Mother's home such that return of the child to the home "would cause the child to be subjected to further abuse and neglect." [3] DCS's petition

---

1. The Revised Permanency Plan for J.D.M.B. ("Plan"), dated March 26, 2002 and entered as part of the Technical Record in this case, reveals that J.D.M.B. was removed from Mother's home "due to having cigarette burns on his legs, arms and back." The Plan further notes that Mother "did not give a clear explanation" as to how J.D.M.B. received the burns.

2. We note that DCS's petition, as entered in the Technical Record, appears to be missing at least one page.

3. DCS's petition also sought to terminate the parental rights of Mother and Harold Bonner ("Bonner") to minor child S.M.L. (d.o.b. 6/3/88). According to DCS's petition, "no person is named as the father of [S.M.L.] on said child's birth certificate, but Petitioner avers that Portia Ann Letney Butler has stated that Harold Bonner is the biological father."

Bonner's parental rights to S.M.L. were terminated pursuant to an Order of Default entered on October 8, 2002. Mother consented to the termination of her parental rights at a hearing before the juvenile court on April 15, 2002. Mother's parental rights were subse-

sought termination of Father's parental rights on the following grounds:

> The Respondent, William Mark Butler, has abandoned the referenced child, [J.D.M.B.], in that:
>
> (a) William Mark Butler is incarcerated at the time of the institution of this proceeding and has willfully failed to support or make reasonable payments toward the support of the child or willfully failed to visit the child for four (4) consecutive months immediately preceding such parent's incarceration; and
>
> (b) William Mark Butler has engaged in conduct prior to his incarceration which exhibits a wanton disregard for the welfare of the child.

On March 28, 2000, the juvenile court for McNairy County, Tennessee, filed an Order appointing a Guardian Ad Litem for J.D.M.B.[4] Several days later, the court filed an Order appointing counsel for Father as an indigent party in a termination of parental rights proceeding.

Mother and Father filed separate Answers to DCS's petition, each party denying that grounds for termination of their respective parental rights existed, or that such termination was in the best interests of J.D.M.B. Father subsequently filed a motion requesting that his case be severed from those "of his fellow co-defendants," Mother and Bonner. Father filed an additional motion seeking a continuance of his case until after his scheduled hearing before the Mississippi Board of Pardons and Paroles on August 10, 2000.

On June 30, 2000, Father filed a motion requesting that the juvenile court "enter an order establishing the mode of William Mark Butler's participation in the hearing in this matter as set out in T.C.A. Sec. 36–1–113, the mode of participation being discretionary with the court." Finding that Father's incarceration prevented respondent from attending the hearing in person, the court entered an Order stating that the "only viable means of permitting" Father to participate in the petition hearing was by teleconference.

DCS filed an Amended Petition on July 13, 2000, adopting language utilized in T.C.A. § 36–1–113(g)(6) (2001) to establish an additional ground in support of termination of Father's parental rights. The Amended Petition states:

> That Respondent, William Mark Butler, has been confined in a correctional facility by Order of the Court as a result of a criminal act, under a sentence of ten (10) or more years and that the child was under the age of eight (8) years of age at the time the sentence was entered by the Court.

On December 11, 2000, DCS filed a petition to suspend the visitation rights of Mother as to J.D.M.B. on the basis that visitation was contrary to the best interests and welfare of the minor child. The juvenile court, in response to this petition, entered an Order modifying Mother's visitation rights, stating that any further visitation between Mother and J.D.M.B. "shall be at the discretion of the [minor child]."

An initial hearing on DCS's termination petition was held before the juvenile court on December 17, 2001. Father testified at the hearing via telephone. At the hearing, Father testified on direct-examination that

---

quently terminated pursuant to a Consent Order entered November 12, 2002. The rights of either parent to S.M.L. are not at issue in the case at bar. Respondent, William Mark Butler, makes no claim of parental rights as to S.M.L.

4. For various reasons, the juvenile court was forced to appoint a substitute Guardian Ad Litem for J.D.M.B. on three separate occasions.

he wanted custody of his son, and further noted that his current wife, Cynthia Butler, wanted J.D.M.B. to live with the family.[5] On cross-examination, Father testified that he last visited with his child on May 23, 1991, and further admitted that his last telephone conversation with J.D.M.B. took place on September 29, 2001.

On May 16, 2002, DCS filed a Motion for Review and Ratification of the Permanency Plan prepared by petitioner with regard to J.D.M.B. Specifically, DCS requested that the juvenile court review the plan, "assess the compliance of all parties to the statement of responsibilities," and "to make the disposition it finds to be in the best interests" of J.D.M.B. By Order entered June 6, 2002, the court "ratified, approved and adopted" the Permanency Plan, and further determined that temporary custody of J.D.M.B. "shall remain" with DCS.

A second hearing on DCS's termination petition was held on April 15, 2002. In an Order entered November 12, 2002, the juvenile court terminated Mother and Father's parental rights as to minor child J.D.M.B., finding clear and convincing evidence that grounds for termination existed, and that termination was in the best interests of the child. The court's Order noted:

> That Portia Ann Letney Butler, through her attorney, advised the Court that she was not going to contest the termination petition and consented to the termination of her parental rights. She stipulates to the grounds named in the petition and agrees that it is in the best interest of her children that her parental rights be terminated.

**5.** Father and Mother divorced on May 5, 1992. Father married Cynthia Butler on May

The court terminated Father's parental rights on the grounds of willful abandonment pursuant to T.C.A. § 36–1–113(g)(1), "constructive abandonment" on the basis that respondent "engaged in conduct prior to incarceration which exhibits a wanton disregard" for the minor child, and failure to remedy the conditions that led to the child's removal from the home, noting that there is "little likelihood" that said conditions would be remedied in the near future such that return of the child to the home would, "in all reasonable probability," "cause the child to be subjected to further abuse or neglect." As further grounds for termination of Father's parental rights, the court noted:

> That there is clear and convincing evidence that the Respondent, William Mark Butler, has been confined in a correctional facility under a sentence of ten (10) or more years while the child, [J.D.M.B.] was under age eight (8) at the time of the sentencing.

In addition to finding clear and convincing evidence of grounds to support termination of Father's parental rights, the court concluded that termination was in the best interests of the child. Upon terminating Mother and Father's parental rights, the court awarded full guardianship of J.D.M.B. to DCS, with complete "authority to place the child for adoption and to consent to his adoption in *loco parentis.*"

■ Father appeals, presenting the following issues for review, as stated in his brief:

> Whether the trial court's findings regarding grounds for termination of [Father's] parental rights are supported by clear and convincing evidence.

24, 2001.

Whether the trial court's finding that termination of the parental rights of William Butler was in the best interest of his son, [J.D.M.B.], [and] was supported by clear and convincing evidence.

Pursuant to T.C.A. § 36–1–113(c)(1)(2) (2001), termination of parental rights must be based on a finding by clear and convincing evidence that grounds for termination exist, and that such termination is in the best interest of the child. Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R.App. P. 13(d).

 It is a well established premise that "[a] parent has a fundamental right to the care, custody and control of his or her child." *Dep't of Children's Servs. v. Wiley,* No. 03A01–9903–JV00091, 1999 WL 1068726, at *3 (Tenn.Ct.App.Nov.24, 1999) (citing *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). A parent's right to the care, custody, and control of his or her child is not absolute and may be terminated if justified by clear and convincing evidence under the applicable statute. *In re C.W.W.,* 37 S.W.3d 467, 473 (Tenn.Ct.App.2000) (citing *Wiley,* 1999 WL 1068726, at *3 (citing *Santosky v. Kramer,* 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982))). Termination of parental rights must be based on a finding, by clear and convincing evidence, that the grounds for termination of rights have been established and the termination of parental rights is in the best interest of the child. T.C.A. § 36–1–113(c)(1) and (2). In addition, in order to terminate parental rights there must be a showing that the parent is unfit or that substantial harm to the child will result if the parental rights

are not terminated. *In Re Swanson,* 2 S.W.3d 180, 188 (Tenn.1999) (citations omitted).

 T.C.A. § 36–1–113(g) (2001) sets forth several grounds supporting the termination of parental or guardianship rights, including the following:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:

\* \* \* \* \* \*

(6) The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

The existence of any of the statutory bases defined in T.C.A. § 36–1–113(g) will support termination of an individual's parental rights. *See In re C.W.W.,* 37 S.W.3d 467, 473 (Tenn.Ct.App.2000).

Father concedes that there is clear and convincing evidence to support termination of his parental rights pursuant to the grounds set forth in T.C.A. § 36–1–113(g)(6). To be precise, the record indicates that Father is currently serving a thirty-five year sentence for Accessory after the fact of Murder, Attempted Grand Larceny, and Arson. Father has been imprisoned on these charges since 1991, at a time when J.D.M.B. was under eight years of age. On this basis, and in recognition of Father's stipulation, we conclude that grounds for termination of Father's parental rights exist under T.C.A. § 36–1–113(g)(6).

 Having determined that grounds for termination of Father's parental rights exist, we must now examine whether there is clear and convincing evidence in the record to indicate that termination of Fa-

ther's rights is in the best interests of the minor child. In its Order of November 12, 2002, terminating Father's parental rights, the juvenile court analyzed the relevant factors set forth in T.C.A. § 36–1–113(i) (2001) in concluding that termination was in the best interests of the minor child. Specifically, the court determined:

a) Respondents, Portia Butler and William Mark Butler, have failed to make an adjustment of circumstance, conduct, or conditions as to make it safe and in the children's best interests to be in the home of the parents; and

b) Respondents, Portia Butler and William Mark Butler, have failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible; and/or,

c) Respondents, Portia Butler and William Mark Butler, have not paid child support consistent with the child support guidelines at any time during the children's custody in the Department.

d) Respondents, Portia Butler and William Mark Butler, have not maintained regular visitation or contact with the minor children.

e) Respondent, William Mark Butler, has no meaningful relationship with the minor child, [J.D.M.B.].

f) The effect of a change of caretakers and physical environment on the children's emotional and psychological condition is not likely to be beneficial to the children.

We find nothing in the record to preponderate against the juvenile court's findings. In addition to the determinations of the court set forth above, we note that Father has been imprisoned on charges of Accessory after the fact of Murder, Attempted Grand Larceny, and Arson since before, or shortly after, J.D.M.B.'s birth. Father's last visit with child, as of the December 17, 2001 hearing, was on May 23, 1991. Prior to the December 17, 2001 hearing, Father's last telephone conversation with J.D.M.B. was on September 29, 2001. There is no evidence in the record to indicate that Father maintains consistent visitation or phone contact with minor child. Most significantly, we note that minor child is almost thirteen years of age, and has never lived with Father. According to the Permanency Plan submitted as part of the record in this case, J.D.M.B. has lived in the same foster home since 1991, "gets along well with his foster parents," and is functioning "at grade level." For these reasons, and in consideration of the reasons stated by the juvenile court in its November 12, 2002 Order, we find clear and convincing evidence in the record to support the court's finding that termination of Father's parental rights is in J.D.M.B.'s best interests.

The juvenile court's order terminating father's parental rights is affirmed, and the case is remanded to the juvenile court for such further proceedings as are necessary. Costs of the appeal are assessed to appellant, William Mark Butler, and his surety.